## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

REGINALD PATTERSON,                                    CIVIL ACTION
   Plaintiff

VERSUS                                                 NO.  22-2213

GULF INLAND CONTRACTORS, INC.,                         SECTION: "E" (4)
   Defendant

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendant Gulf Inland Contractors, Inc. ("GIC").[1] The motion is opposed by the Plaintiff, Reginald Patterson ("Patterson").[2] Patterson filed his opposition on May 2, 2023,[3] and GIC filed its reply on May 10, 2023.[4] Patterson was given leave to file a sur-reply in opposition,[5] filed on May 23, 2023.[6] GIC's motion is **GRANTED**.

## PROCEDURAL BACKGROUND

Patterson filed this lawsuit in July 2022, bringing claims under the Jones Act[7] and general maritime law for injuries he sustained while working in the Clovelly Field.[8] Discovery was completed in April 2023.[9] GIC filed this motion for summary judgment on April 14, 2023, arguing that Patterson cannot recover for his injuries because he is

---

[1] R. Doc. 29.
[2] R. Doc. 31.
[3] R. Doc. 31.
[4] R. Doc. 39.
[5] R. Doc. 45.
[6] R. Doc. 46
[7] 46 U.S.C. § 30104 et seq.
[8] R. Doc. 1. The parties' filings exclusively refer to this site as the "Cloverly" field, but at oral argument, both parties' counsel agreed the correct name is Clovelly Field.
[9] R. Doc. 28.

not a seaman under the Jones Act or general maritime law and has no claim for vessel negligence.[10]

## FACTUAL BACKGROUND

### I. Undisputed Facts

The following facts are not in dispute.

On January 6, 2022,[11] Patterson was working on a fixed structure in the Clovelly Field.[12] Patterson was a laborer supplied by a temporary labor contractor[13] to GIC as a rigger, tasked with hooking and unhooking lines on fixed structures in the Clovelly Field and removing the marsh grass and other debris that covered some of the fixed oil and gas platforms in the field.[14] GIC had been contracted by Texas Petroleum Investment Corporation (TPIC) to perform Hurricane Ida cleanup by removing oil field-related structures and debris in the Clovelly Field.[15] At that time, GIC also had several assets in the field, including a quartersbarge, airboats, and various crane and junk barges.[16]

The quartersbarge had crew quarters and a crane on its deck.[17] Its dimensions were 150 feet long by 50 feet wide by 8 feet tall.[18] It was principally used as a work platform for its deck crane and as a floating dormitory for workers.[19] Patterson was assigned to eat and sleep on the quartersbarge.[20]

---

[10] R. Doc. 29-1 at 1.
[11] *See* R. Doc. 29-4 at ¶ 28; *see also* R. Doc. 43 at ¶ 28.
[12] R. Doc. 29-4 at ¶ 26; R. Doc. 43 at ¶ 26.
[13] R. Doc. 29-4 at ¶ 1; *see also* R. Doc. 43 at ¶ 1.
[14] *See* R. Doc. 29-4 at ¶¶ 3, 6; *see also* R. Doc. 43 at ¶¶ 3, 6.
[15] R. Doc. 29-4 at ¶ 2; *see also* R. Doc. 43 at ¶ 2.
[16] R. Doc. 29-4 at ¶ 4; *see also* R. Doc. 43 at ¶ 4.
[17] R. Doc. 29-4 at ¶ 8; R. Doc. 43 at ¶ 8.
[18] R. Doc. 29-4 at ¶ 7; R. Doc. 43 at ¶ 7.
[19] R. Doc. 29-4 at ¶ 20; R. Doc. 43 at ¶ 20. Though Patterson denies the "principal" usage of the quartersbarge was as a floating dormitory and work platform for its crane, *see* R. Doc. 43 at ¶ 20, he provided no record citation to support his denial, even after being given leave to amend his response to R. Doc. 29-4, GIC's Statement of Uncontested Material Facts. *See* R. Doc. 40. The Court construes Patterson's unsupported denial as an admission. *See* Fed. R. Civ. P. 56(e)(2).
[20] R. Doc. 29-4 at ¶ 7; R. Doc. 43 at ¶ 7.

The quartersbarge was not registered with the Coast Guard.[21] It had no engines or any mechanical contrivance to allow for independent movement or self-propulsion.[22] It had no navigational equipment,[23] permanently affixed navigational lights,[24] radar,[25] steering mechanism,[26] rudder,[27] wheelhouse,[28] or lifeboats.[29] It had no captain or navigational crew;[30] instead, it had to be towed to and from locations by a tugboat.[31] Once on location, through the operation of winches, the quartersbarge would lower column-like structures known as spuds to make contact with the waterbody bed.[32]

Patterson was working on a fixed platform, not the quartersbarge, at the time he allegedly was injured.[33] Unlike the quartersbarge, which could be towed to a new location after its spuds were raised,[34] this fixed platform was permanently moored to the bed of the waterbody and was not capable of being moved.[35] To remove it from the location would have effectively destroyed it.[36]

## II.    Disputed Facts

Patterson argues there are genuine disputes of material fact that preclude summary judgment.

---

[21] R. Doc. 29-4 at ¶ 19; R. Doc. 43 at ¶ 19.
[22] R. Doc. 29-4 at ¶ 16; R. Doc. 43 at ¶ 16.
[23] R. Doc. 29-4 at ¶ 10; R. Doc. 43 at ¶ 10.
[24] R. Doc. 29-4 at ¶ 17; R. Doc. 43 at ¶ 17.
[25] R. Doc. 29-4 at ¶ 11; R. Doc. 43 at ¶ 11.
[26] R. Doc. 29-4 at ¶ 12; R. Doc. 43 at ¶ 12.
[27] R. Doc. 29-4 at ¶ 13; R. Doc. 43 at ¶ 13.
[28] R. Doc. 29-4 at ¶ 14; R. Doc. 43 at ¶ 14.
[29] R. Doc. 29-4 at ¶ 15; R. Doc. 43 at ¶ 15.
[30] R. Doc. 29-4 at ¶ 18; R. Doc. 43 at ¶ 18. Patterson denied this statement but provided no record citation to support his denial. The Court considers Patterson's unsupported denial an admission. *See* Fed. R. Civ. P. 56(e)(2).
[31] R. Doc. 29-4 at ¶ 22; R. Doc. 43 at ¶ 22.
[32] R. Doc. 29-4 at ¶ 23; R. Doc. 43 at ¶ 23.
[33] R. Doc. 29-4 at ¶ 28; R. Doc. 43 at ¶ 28.
[34] *See* R. Doc. 29-4 at ¶¶ 22–24; R. Doc. 43 at ¶¶ 22–24.
[35] R. Doc. 29-4 at ¶ 27; R. Doc. 43 at ¶ 27.
[36] *Id.*

First, GIC asserts it is an undisputed fact that Patterson was not assigned to, nor did he operate, work on, navigate, maintain, or equip any of GIC's *vessels* in the Clovelly Field.[37] Patterson disputes this fact,[38] pointing to his deposition testimony[39] that he cleaned the quartersbarge and assisted in efforts to move it by helping to unmoor it from the waterbody bed. Patterson argues the quartersbarge was a vessel and, as a result, whether he was assigned to a "vessel" is in dispute because the quartersbarge could be unmoored from the bed of the waterbody and moved.

Second, GIC asserts it is an undisputed fact that Plaintiff was working on a fixed platform at the time he was injured.[40] In response, Patterson admits he was working on a fixed platform at the time of his injury but disputes whether he worked *all* of his time on a fixed platform.[41] In support of his denial of paragraph 26 of GIC's statement of undisputed facts, Patterson supplied his own declaration, in which he declared at least 30% of his time was spent operating the spuds that held the quartersbarge in place or rigging and cleaning on the quartersbarge's deck.[42] Patterson also points to his deposition testimony in which he says he assisted in efforts to unmoor the barge from the waterbody bed.[43] GIC argues the declaration and deposition testimony are not sufficient to create a genuine dispute of material fact because the declaration is conclusory and the cited deposition testimony is not consistent with Patterson's other deposition testimony, in which he said that his work was rigging and it was done on the

---

[37] R. Doc. 29-4 at ¶ 5.
[38] R. Doc. 43 at ¶ 5.
[39] R. Doc. 42-2 at 78:2–12, 78:13–23, 80:10–12.
[40] R. Doc. 29-4 at ¶ 26.
[41] R. Doc. 43 at ¶ 26.
[42] R. Doc. 42-3.
[43] R. Doc. 42-2 at 78:2–12, 78:13–23, 80:10–12.

fixed platform.[44]

Third, the parties dispute whether the quartersbarge was solely a work platform. GIC asserts it is an undisputed fact that the quartersbarge was used only as a work platform.[45] Patterson denies this is an undisputed fact,[46] citing his deposition,[47] in which he testified that on some occasions, when the quartersbarge would move, Patterson and other workers would ride on it to the next site. He argues this shows the barge also was used in transportation.

Fourth, GIC says it is an undisputed fact that the quartersbarge was not used to transport crew and cargo.[48] Patterson denies this is undisputed,[49] again citing his deposition testimony that he would occasionally help life the quartersbarge's spuds and then ride on the barge to its next location.[50]

## STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[51] "An issue is material if its resolution could affect the outcome of the action."[52] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[53] All reasonable inferences are drawn in favor of the

---

[44] *See* R. Doc. 39 at p. 4.
[45] R. Doc. 29-4 at ¶ 8.
[46] R. Doc. 43 at ¶ 8.
[47] R. Doc. 42-2 at 130:23–131:4.
[48] R. Doc. 29-4 at ¶¶ 21, 25.
[49] R. Doc. 43 at ¶¶ 21, 25.
[50] R. Doc. 42-2 at 80:10–16, 130:23–131:4.
[51] Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[52] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[53] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

nonmoving party.[54] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[55]

If the dispositive issue is one for which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[56] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[57]

On the other hand, if the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, as it is in the case, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[58]

---

[54] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[55] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

[56] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

[57] *Celotex*, 477 U.S. at 322–24.

[58] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322–24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[59] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[60] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[61] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[62] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[63]

Still, "unsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence

---

[59] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[60] *Celotex*, 477 U.S. at 332–33.
[61] *Id.*
[62] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[63] *Id.*; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.

supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[64]

## LAW AND ANALYSIS

GIC argues its motion for summary judgment should be granted because there are no material facts in dispute and Patterson has no valid cause of action under the Jones Act or general maritime law.[65]

**I.    GIC is entitled to summary judgment that Patterson is not a seaman.**

At the summary judgment stage, the burden is on the movant. GIC must establish there are no material facts in dispute and it is entitled to judgment as a matter of law. The Court will view the evidence and any inferences drawn from the evidence in the light most favorable to the non-movant to determine whether there are genuine issues of material fact and, if not, whether the movant is entitled to judgment as a matter of law.[66]

When underlying material facts regarding a plaintiff's seaman status are disputed, the question cannot be decided on summary judgment and must be left for a jury.[67] Seaman status is a mixed question of law and fact[68] requiring a fact-intensive analysis that must be determined on a case-by-case basis.[69] An inquiry into the nature

---

[64] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

[65] R. Doc. 29-1.

[66] *See Buras v. Commercial Testing & Eng'g Co.*, 736 F.2d 307, 309 (5th Cir.1984).

[67] *Ardoin v. J. Ray McDermott & Co.*, 641 F.2d 277, 280 (5th Cir. 1981); *Stanley v. Guy Scroggins Const. Co.*, 297 F.2d 374, 376-77 (5th Cir. 1961).

[68] *Chandris Inc.* v. *Latsis*, 515 U.S. 347, 369 (1995); *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991).

[69] *Encarnacion v. BP Expl. and Prod., Inc.*, 2013 WL 968138 (E.D. La. Mar. 12, 2013); *see also In Re Endeavor Marine Inc.*, 234 F.3d 287, 290 (5th Cir. 2000).

(or existence) of a Jones Act vessel and an injured employee's precise relationship with it is fact-specific.[70]

"The Jones Act is remedial legislation and as such should be liberally construed in favor of injured seamen."[71] If reasonable persons could draw conflicting inferences, seaman status is a question for the jury and summary judgment must be denied.[72] "[T]he issue of seaman status is ordinarily a jury question, even when the claim to seaman status is marginal."[73] Thus, summary judgment on seaman status often is inappropriate.[74] Nevertheless, summary judgment is proper when the underlying facts are undisputed and the record reveals no evidence from which reasonable persons might draw conflicting inferences about whether the claimant is a Jones Act seaman.[75]

Because the existence of a vessel is the threshold requirement for Patterson's claims, the Court begins its inquiry there.

### A. The Court need not decide whether the quartersbarge was a vessel as a matter of law to rule on Patterson's Jones Act claims.

At trial, Patterson must prove he is a Jones Act seaman to prevail on his claims under the Jones Act. That is, Patterson bears the burden at trial of "demonstrat[ing] an employment-related connection to a vessel in navigation."[76] "Obviously, the existence of a vessel . . . is a fundamental prerequisite to a Jones Act Claim."[77]

---

[70] *McDermott Int'l*, 498 U.S. at 356 (citing *Desper v. Starved Rock Ferry Co.*, 342 U.S. 187, 190 (1952)).

[71] *Guidry v. South La. Contractors, Inc.*, 614 F.2d 447, 455 (5th Cir. 1980).

[72] *Buras*, 736 F.2d at 309; *Chandris*, 515 U.S. at 369. *Cf. Landry v. Amoco Production Co.*, 595 F.2d 1070 (5th Cir. 1979) (reversing district court's denial of plaintiff's motion for a directed verdict because "the facts governing plaintiff's status as a seaman were established beyond cavil").

[73] *White v. Valley Line Co.*, 736 F.2d 304, 305 (5th Cir. 1984).

[74] *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 554 (1997).

[75] *Id. See also, e.g.*, *Prinzi v. Keydril Co.*, 738 F.2d 707, 709 (5th Cir. 1984) (finding the parties agreed the relevant facts were not in dispute and reasonable persons could not have differed with respect to the inferences drawn from those facts).

[76] *Manuel v. P.A.W. Drilling & Well Serv., Inc.*, 135 F.3d 344, 347 (5th Cir. 1998) (citing *Chandris*, 515 U.S. at 368–72 (1995)).

[77] *Id.*

By statute, the definition of "vessel" includes "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water."[78] Of course, "[n]ot *every* floating structure is a 'vessel'"; the definition should not sweep in "anything that floats."[79] Instead, a court must decide whether "a reasonable observer, looking to the [alleged vessel]'s physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water." In divining the purpose of the craft, courts are to consider only "objective evidence of a waterborne transportation purpose" rather than "the subjective intent of the owner."[80] Put another way, "where the use of the craft in transporting passengers, cargo, or equipment was an important part of the business in which the craft was engaged," the Fifth Circuit has "found that craft to be a vessel, even if it also served as a work platform."[81] However, any transportation purpose cannot be merely "incidental to the purpose for which [a craft] was designed."[82]

"In a long line of cases," the Fifth Circuit has held so-called "special purpose structures," including barges and dredges, to be vessels.[83] These cases all "exhibit a common theme: "if a primary purpose of the craft is to transport passengers, cargo, or equipment from place to place across navigable waters, then that structure is a vessel."[84] Key here is that it be *a* primary purpose, not *the sole* primary purpose. This comports with the Supreme Court's guidance that a structure may be a vessel when a "reasonable observer . . . would consider it designed to a practical degree for carrying people or

---

[78] 1 U.S.C. § 3.
[79] *Lozman v. City of Riviera Beach, Fla.*, 568 U.S. 115, 125 (2013).
[80] *Lozman*, 568 U.S. at 125–27.
[81] *Manuel*, 135 F.3d at 351.
[82] *Brunet*, 715 F.2d at 198.
[83] *Manuel*, 135 F.3d at 348 (collecting cases).
[84] *Id.*

things over water."[85] In one illustrative case, the Fifth Circuit in *Brunet v. Boh Brothers Construction Company, Inc.*[86] reversed a district court ruling that a barge "designed to transport a pile-driving crane across navigable waters to jobsites that [could not] be reached by land-based pile-drivers" was not a vessel as a matter of law. Though agreeing that "the barge was used more often to support the crane than to transport it," the court held that "by necessity," "the barge was designed both to support the crane and to transport it on a fairly regular basis from one jobsite to another."[87]

Patterson argues there are material facts in dispute sufficient to defeat summary judgment. GIC says the barge was solely a work platform,[88] but Patterson testified that sometimes, he and other workers would ride on the barge to the next site.[89] As a result, Patterson disputes[90] GIC's contention that it is an undisputed fact the quartersbarge was not used to transport crew or cargo.[91] Construing these facts in a light most favorable to him, Patterson argues reasonable observer may indeed consider the quartersbarge "designed to a practical degree" to "carry[] people . . . over water."[92]

But ultimately, the Court need not determine that there is a material fact in dispute as to whether transportation was an "important" or only incidental purpose of the barge, because Patterson fails other elements of the seaman test.

---

[85] *Lozman*, 568 U.S. at 121.
[86] 715 F.2d 196 (5th Cir. 1983).
[87] *Id.* at 199.
[88] R. Doc. 29-4 at ¶ 8.
[89] R. Doc. 42-2 at 130:23–131:4.
[90] R. Doc. 43 at ¶¶ 21, 25.
[91] R. Doc. 29-4 at ¶¶ 21, 25.
[92] *Lozman*, 568 U.S. at 121.

**B. The undisputed material facts show that, as a matter of law, Patterson's connection to a vessel was not sufficiently substantial in duration and nature to confer seaman status.**

At trial, should Patterson succeed in showing that the quartersbarge was a vessel, he would then have to prove the "two basic elements" of his alleged "employment-related connection": First, that his "duties . . . contribute[d] to the function of the vessel," and second, that his "connection to the vessel" was "substantial in terms of both its duration and nature."[93]

The Jones Act does not define "seaman," and the "difficult . . . task of giving a cogent meaning to [the] term has been left to the courts."[94] Despite some guidance from Congress and the courts, drawing a line between seaman and non-seaman has proven difficult. Because courts have struggled to fix a firm meaning to the term "seaman," it is often said that only jurors may determine its application in the circumstances of a particular case.[95] Case law provides some guidelines for application of the term, however.

In *Chandris, Inc. v. Latsis*, the Supreme Court provided a two-part test to determine seaman status.[96] First, the employee's duties must "contribut[e] to the function of the vessel or to the accomplishment of its mission."[97] Second, the employee "must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration (temporal prong) and its nature (functional prong)."[98] The temporal and functional prongs both must be present.[99] The

---

[93] *Manuel*, 135 F.3d at 347.
[94] *In re Endeavor Marine Inc.*, 234 F.3d at 290.
[95] *Offshore Co. v. Robison*, 266 F.2d 769, 779-80 (5th Cir. 1959).
[96] 515 U.S. at 376.
[97] *Id.* at 368 (quoting *McDermott Int'l,* 498 U.S. at 355).
[98] *Id.*
[99] *Roberts v. Cardinal Servs., Inc.*, 266 F.3d at 374.

*Chandris* Court endorsed a rule of thumb for evaluating the temporal prong: "A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."[100] The Fifth Circuit has further held the functional prong requires an inquiry into the plaintiff's "service, his status as a member of the vessel, and his relationship as such to the vessel and its operations in navigable waters," not into where the injury occurred, the particular work being performed at the moment of injury, or the job title.[101]

The parties do not address whether Patterson's work satisfied the *Chandris* functional prong; instead, they disagree on whether Patterson's work satisfied the 30% test of *Chandris*'s temporal prong. GIC argues that, even assuming the quartersbarge is a vessel,[102] it is entitled to judgment as a matter of law that Patterson is not a seaman because any time Patterson spent in service of the quartersbarge was "incidental to his primary responsibility to work as a rigger on the fixed platform structures in the field."[103] Based on Patterson's deposition testimony, GIC calculates that Patterson may have spent a total of ninety minutes in his roughly six weeks on the job raising spud winches, a task ostensibly in service of helping the quartersbarge be towed from one location to another.[104] GIC's estimate may be generous: in his deposition, Patterson

---

[100] *Chandris*, 515 U.S. at 371.

[101] *Naquin v. Elevating Boats, LLC*, 842 F.Supp.2d 1008, 1016 (E.D. La. Jan. 3, 2012) (citing *Chandris*, 515 U.S. at 359-60, and *Swanson v. Marra Bros.*, Inc., 328 U.S. 1 (1946)). The Fifth Circuit has also held that three "additional inquiries should be made" when assessing a worker's seaman status: (1) "Does the worker owe his allegiance to the vessel" or a "shoreside employer"?; (2) "Is the work sea-based on [otherwise] involve seagoing activity?"; and (3) "Is the worker's assignment to a vessel," if any, "limited to performance of a discrete task after which the worker's connection to the vessel ends," or does the worker "sail[] with the vessel from port to port" as part of his assignment? *Sanchez v. Smart Fabricators of Texas, L.L.C.*, 997 F.3d 564, 574 (5th Cir.2021) (en banc). In this case, the Court can decide the issue on the *Chandris* temporal prong and does not need to explore these additional inquiries.

[102] A categorization GIC challenges strenuously, but which the Court will not decide at this stage. *See* Part I.A, *supra*.

[103] R. Doc. 29-1 at p. 13.

[104] *Id.*

estimated that his work helping to move the quartersbarge by operating the spud winches might have taken "[a]bout 15, 20 minutes" the "two or three times" he assisted.[105] Patterson testified also in his deposition that in addition to operating the spud winches (a task he sometimes calls "lifting the pylons"[106]), he also would occasionally assist with "cleaning up" [107] and "rigging operations"[108] on the deck of the quartersbarge, but he did not offer any specific estimates of how much time he spent on these tasks.

Patterson's only additional support for his argument that the duration of his work on a vessel is in dispute is his own conclusory declaration of the same: "[he] spent more than 30% of [his] time working on the [quarters]barge."[109] Patterson's conclusory declaration is insufficient to create a genuine dispute of material fact. "The party opposing summary judgment must come forward with specific facts showing that there is a genuine issue for trial. Conclusory statements in an affidavit do not provide facts that will counter summary judgment evidence."[110] Patterson provides no time sheets, hours log, employment records, or other evidence to bolster his own conclusory statements. "[T]estimony based on conjecture alone is insufficient to raise an issue to defeat summary judgment," and Patterson's statements "are inadequate to raise a genuine issue of fact."[111]

Even viewing the evidence and any inferences in a light most favorable to Patterson, the Court finds no evidence exists from which reasonable persons might

---

[105] R. Doc. 29-2 at pp. 21–23.
[106] R. Doc. 42-2 at p. 6.
[107] *Id.* at p. 5.
[108] R. Doc. 42-3 at ¶ 2.
[109] *Id.* at ¶ 3.
[110] *Lechuga v. S. Pac. Transp. Co.*, 949 F.2d 790, 798 (5th Cir. 1992).
[111] *Id.*

conclude that Patterson has satisfied the requirements of *Chandris*'s temporal prong. As a result, Patterson cannot establish that he is a seaman, and the Court will grant summary judgment to GIC on Patterson's Jones Act claims.

## II.   Patterson cannot recover for maintenance and cure, because this remedy is available only to seamen.

Patterson seeks to recover for maintenance and cure under the general maritime law on account of his claim that "he was injured while in service of the [quartersbarge]."[112] He cannot succeed on this claim.

Maintenance and cure "is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel."[113] "Only seamen are entitled to the benefits of maintenance and cure. The standard for determining seaman status for purposes of maintenance and cure is the same as that established for determining status under the Jones Act."[114] At oral argument, counsel for Patterson clarified that Patterson is asserting seaman status under the *Chandris* test.[115] Because Patterson fails the *Chandris* test for seaman status, GIC is entitled to summary judgment Patterson's claims for maintenance and cure.

## III.   Because Patterson is not a seaman, he cannot succeed on his claim of unseaworthiness.

"General maritime law imposes a duty upon shipowners to provide a seaworthy vessel."[116] A vessel might be unseaworthy for "any number" of reasons: "Her gear might be defective, her appurtenances in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. The method of loading her

---

[112] R. Doc. 1 at p. 3 ¶ 7.1.

[113] *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006) (citation omitted).

[114] *Hall v. Diamond M Co.*, 732 F.2d 1246, 1248 (5th Cir. 1984); *see also Lantz v. SHRM Catering Servs., Inc.*, 14 F.3d 54 (5th Cir. 1994).

[115] Tr. Oral Arg., R. Doc. 55 at 3:3–7.

cargo, or the manner of its stowage might be improper."[117] Indeed, "an unsafe method of work may render a vessel unseaworthy."[118]

With few exceptions, unseaworthiness is a cause of action that can be asserted only by seamen injured while performing seaman's duties.[119] At oral argument, Patterson clarified that he is asserting this claim only as a seaman under the *Chandris* analysis.[120] Because Patterson is not a seaman under that test,[121] GIC is entitled to summary judgment on Patterson's claim of unseaworthiness.

## IV.  Patterson does not oppose summary judgment on his fourth cause of action.

At oral argument, Patterson conceded that he does not contest summary judgment on his fourth cause of action.[122] Accordingly, the Court will grant summary judgment to GIC on that claim.

### CONCLUSION

**IT IS ORDERED** that GIC's Motion for Summary Judgment is **GRANTED**.

**New Orleans, Louisiana, this 18th day of July, 2023.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[116] *Luwisch v. Am. Marine Corp.*, 956 F.3d 320, 326 (5th Cir. 2020) (quoting *Hlodan v. Ohio Barge Line*, Inc., 611 F.2d 71, 74 (5th Cir. 1980)).
[117] *Smith v. Basic Marine Servs., Inc.*, 964 F. Supp. 2d 597, 607 (E.D. La. 2013), *aff'd*, 571 F. App'x 342 (5th Cir. 2014) (quoting *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494 (1971)).
[118] *Rogers v. Eagle Offshore Drilling Servs., Inc.*, 764 F.2d 300, 303 (5th Cir. 1985) (citations omitted).
[119] *See Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 99 (1946); *see also* Thomas J. Schoenbaum, 1 ADMIRALTY & MAR. LAW § 6:25 (6th ed.) (collecting cases).
[120] Tr. Oral Arg., R. Doc. 55 at 2:23–3:7.
[121] *See* Parts I and II, *supra*.
[122] Tr. Oral Arg., R. Doc. 55 at 3:15–23.